UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATRINA A. WILLIAMS,            )
                                )
            Plaintiff,           )
                                )
v.                              )   Case No. 18-2096-HLT
                                )
UNITEDHEALTH GROUP,             )
                                )
            Defendant.           )

**REPORT AND RECOMMENDATION**

On February 6, 2020, the undersigned U.S. Magistrate Judge, James P. O'Hara, conducted a telephone status conference in this employment-discrimination case. The plaintiff, Katrina A. Williams, appeared pro se. The defendant, UnitedHealth Group, appeared through counsel, Karen R. Glickstein and Janelle L. Williams. The court held the status conference to discuss the case's ongoing delays, particularly plaintiff's failure to complete certain pretrial tasks, including completing her deposition and providing a statement of factual contentions and legal claims for insertion into the parties' proposed pretrial order. After the status conference, the court directed both parties to show cause whether or not the action should be dismissed. The parties submitted their responses to the show-cause order on February 20, 2020 (ECF Nos. 172 & 173). Because of plaintiff's continued failure to prosecute the case and her ongoing medical issues, the undersigned respectfully recommends that the presiding U.S. District Judge, Holly L. Teeter, dismiss this case without prejudice to re-filing within one year.

Background

The discovery delays in this case are well-documented in the record, but the undersigned reviews them briefly for the benefit of the reader. Plaintiff filed this lawsuit pro se on February 27, 2018.[1] Although Cecilia Jania Brown entered her appearance as counsel for plaintiff on May 3, 2018,[2] she withdrew from representation after plaintiff terminated the attorney-client relationship.[3] Since June 4, 2018, plaintiff has again proceeded pro se.

The parties conducted discovery and motion practice until February 13, 2019, when plaintiff filed a motion for continuance, asking the court for a discovery stay due to her medical issues. Specifically, plaintiff told the court:

> I have stated on numerous occasions (emails to defendants, notification to Judge O'Hara, and defendants during scheduling conference, etc.) that I have been recovering from PCS (Post Concussion Symptoms), which includes mental fatigue, inability to sustain continued focused coordination, migraines, and vertigo resulting from a recent MVA that totaled my vehicle. I am currently being treated with physical therapy and my primary care physician and neurologist instructed rest from such mental exertion during recovery period; I have been able to heal better in keeping with those orders of rest.[4]

Plaintiff represented she was unable to "process and articulate information for a long period of time without mental fatigue and pain," and her doctors told her that recovery

---

[1] ECF No. 1.

[2] ECF No. 29.

[3] ECF No. 38.

[4] ECF No. 78.

2

could take "weeks, months, to a year."[5] Plaintiff experienced whiplash, occipital neuralgia, migraines, and vision issues, in addition to other caretaking responsibilities during this time.[6] Defendant did not object to the motion, and the court ultimately stayed all proceedings in light of plaintiff's medical issues.[7] The court directed the parties to file a status report by June 3, 2019, requiring plaintiff to provide an update on her medical condition if she believed it would continue to preclude discovery.[8]

In the parties' joint status report, plaintiff asked for the stay to remain in place for another seven weeks because she was not yet "well enough to meet the demands of a close timeline without experiencing visual pain and headaches."[9] She listed upcoming doctors' appointments and stated she was still taking pain medication for headaches, nerve damage, and back pain. The court allowed the stay to continue through July 25, 2019, but noted in its June 5, 2019 order that "if plaintiff isn't medically able to deal with this litigation (which, after all, she initiated), then it's highly unlikely the court would favorably entertain any motion for a continued stay, as just having the case open and needing to be monitored by retained defense counsel imposes financial consequences."[10] The undersigned warned plaintiff that unless she was prepared to move forward at that point, he would recommend

---

[5] *Id.*

[6] ECF No. 173 at 2.

[7] ECF No. 87.

[8] *Id.*

[9] ECF No. 111.

[10] ECF No. 112.

that Judge Teeter dismiss the case, without prejudice to being re-filed, based on lack of prosecution.[11]

The court entered a fourth amended scheduling order, which set a discovery deadline of October 16, 2019 and a deadline to submit the parties' proposed pretrial order by October 30, 2019.[12] Between October 4, 2019, and October 16, 2019, defense counsel repeatedly attempted to depose plaintiff but had to start and stop due to plaintiff's inability to focus and answer questions during the deposition sessions.[13] After two telephonic status conferences with the court, defense counsel was able to complete plaintiff's substantive deposition on October 16, 2019.[14]

However, the two-hour deposition on the protected health information (PHI) issues, allowed by the court's June 5, 2019 order,[15] still had yet to occur. When plaintiff appeared for the PHI deposition on October 28, 2019, plaintiff indicated she had recently taken a painkiller with codeine and had a slight headache.[16] The parties sought another telephonic status conference, and the court ultimately canceled the deposition for the day.[17] After determining the case was no longer on track for its trial date, the court vacated all deadlines in the fourth amended scheduling order and instructed the parties to finish the PHI

---

[11] *Id.*

[12] ECF No. 115.

[13] ECF No. 172.

[14] *Id.*

[15] ECF No. 112.

[16] ECF Nos. 152, 172.

[17] ECF No. 152.

4

deposition and conduct other necessary discovery.[18] The court noted it would review the status of the case after the new year to evaluate whether the parties were ready to proceed.[19]

What followed were three months of ultimately-unsuccessful attempts by the parties to finish the two-hour deposition and submit their proposed pretrial order as required. The court need not recite the protracted e-mail and telephone trail set forth in defendant's response to the order to show cause.[20] To summarize, it is clear from the parties' correspondence that plaintiff generally remained communicative and engaged in the parties' attempts to conduct discovery during this period. But she ultimately was unable to follow through with her commitments or even provide a clear timeline as to when she could complete them.[21]

Plaintiff offered various explanations for why this was, including her ongoing vision therapy, lack of assistive devices, and continued use of pain medications. For example, she had been waiting for a package in the mail to help "with [her] visual relief.[22] Her vision therapy and daily exercises precluded her from being able to complete her portions of the proposed pretrial order.[23] She couldn't participate in her deposition on a certain week because of upcoming medical appointments, or because she would be fatigued and on pain

---

[18] *Id.*

[19] *Id.*

[20] ECF No. 172.

[21] *Id.*

[22] *Id.* at 5.

[23] *Id.* at 6.

5

medications.[24] Then, her six weeks (later extended to seven or eight weeks) of vision therapy prevented her from sitting for a deposition.[25] Plaintiff contends she was only able to obtain the medical care she needed in late 2019, and the vision therapy she now requires is more intensive than she anticipated.[26]

Despite repeatedly asserting she would get to her tasks, plaintiff did not complete them. Defense counsel continued to postpone the deposition and ask plaintiff for her portions of the proposed pretrial order. Ultimately, on January 31, 2020 – after three months of trying to get these things done – defense counsel asked for another status conference with the court to discuss their continued inability to complete these pre-trial requirements.[27] The undersigned held a status conference and suggested he was inclined to dismiss the case without prejudice to re-filing in light of the continued uncertainty of the discovery timeline. He directed both parties to show cause whether the case should be dismissed,[28] to which the parties filed responses on February 20, 2020. Defendant requests a dismissal without prejudice. Plaintiff asserts she is amenable to continuing the case until after she completes her vision therapy.

---

[24] *Id.* at 6.

[25] *Id.* at 7.

[26] ECF No. 173 at 2-3.

[27] ECF No. 172.

[28] ECF Nos. 169, 170.

6

Analysis

The Federal Rules of Civil Procedure recognize that sometimes it may be necessary for the court to dismiss an action as a sanction for a plaintiff's failure to prosecute a case, participate in discovery, or comply with court orders.[29] The Tenth Circuit has directed that dismissal is a severe sanction that should only be used when lesser sanctions would be ineffective.[30] In other words, dismissal is a "weapon of last, rather than first, resort."[31] Due process requires that dismissal be based on willful discovery violations or intentional noncompliance with a court order rather than a party's inability to comply.[32] The Tenth Circuit has defined willful noncompliance as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown."[33]

---

[29] *See, e.g.,* Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party . . . fails to obey a scheduling or other pretrial order."); Fed. R. Civ. P. 37(b)(2)(A)(v) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just order. They may include the following: . . . dismissing the action or proceeding in whole or in part."); Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").

[30] *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[31] *Meade v. Grubbs*, 941 F.2d 1512, 1520 n.6 (overruled in part on other grounds) (10th Cir. 1988); *see also Jones*, 996 F.2d at 264–65 (it was not until discovery deadlines had been continued seven times, plaintiffs continually failed to appear for depositions, and plaintiffs failed to pay attorneys' fees despite a court order, that case was dismissed).

[32] *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

[33] *In re Standard Metals Corp.*, 817 F.2d 625, 628–29 (10th Cir. 1987) (quoting *Patterson v. C.I.T. Corp.*, 352 F.2d 333 (10th Cir. 1965)).

To determine whether a plaintiff's discovery violations and/or noncompliance with court orders warrants dismissal as a sanction, the court must weigh the five factors set out by the Tenth Circuit in *Ehrenhaus v. Reynolds*: (1) the degree of actual prejudice to the defendant; (2) the amount of interference in the judicial process; (3) the culpability of the plaintiff; (4) whether the court warned the plaintiff that noncompliance likely would result in dismissal; and (5) whether lesser sanctions would be appropriate and effective.[34] This list of factors is non-exhaustive, and the factors are not necessarily weighted equally.[35] Dismissal is warranted only when aggravating factors outweigh the judicial system's "strong predisposition to resolve cases on their merits."[36]

In analyzing the *Ehrenhaus* factors in this case, the court must consider plaintiff's pro se status. The court should avoid denying plaintiff access to the court for mistakes resulting from her lack of knowledge or experience with the court system.[37] On the other hand, the court is mindful that pro se litigants must follow the same rules of procedure governing other litigants.[38] As discussed below, after weighing the *Ehrenhaus* factors in

---

[34] 965 F.2d at 920–21.

[35] *Trevizo v. DG Retail, L.L.C.*, No. 14-1028, 2015 WL 134301 at *2 (D. Kan. Jan. 9, 2015) (citing *Anthony v. Alorica, Inc.*, Nos. 08-2437 & 08-2438, 2009 WL 4611456, at *5 (D. Kan. Dec. 4, 2009).

[36] *Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009) (quoting *Ehrenhaus*, 965 F.2d at 921); *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007).

[37] *Ehrenhaus*, 965 F.2d at 921 n.3 ("Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation.").

[38] *Black v. Larimer Cnty.*, 722 F. App'x 763, 766 (10th Cir. 2018); *Norouzian v. Univ. of Kan. Hosp. Auth.*, 438 F. App'x 677, 680 (10th Cir. 2011) (citing *Garrett v. Selby Connor*

whole, the court believes dismissing the case without prejudice to re-filing best serves the interests of justice.

The degree of actual prejudice to the defendant. Defendant has been prejudiced by having to devote significant time and money in a case that has made little progress over the past year. Defendant has had to prepare for, take, and reschedule plaintiff's deposition in piecemeal chunks in a darkened room to accommodate plaintiff.[39] Defendant has had to repeatedly confer with plaintiff, ultimately to no avail, to attempt to schedule the PHI deposition and obtain her portions of the proposed pretrial order. "The fact that the plaintiff is acting pro se and, therefore, is not incurring similar expenses only compounds the situation."[40] Plaintiff's medical issues have caused the court to vacate the deadlines, which still have not been re-set over a year after plaintiff initially moved for a stay. Defendant cannot be expected to wait in limbo indefinitely for plaintiff to provide a day-to-day update on her medical conditions. The prejudice to defendant arises from this persistent uncertainty and the attendant costs associated with it. The first *Ehrenhaus* factor weighs in favor of dismissal.

The amount of interference in the judicial process. Plaintiff's conduct also has led to otherwise unnecessary judicial intervention. The court has had to repeatedly address plaintiff's non-compliance with the scheduling order and the court's directives as a result

---

*Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 549 (10th Cir. 2000).

[39] ECF No. 172 at 3 n.1.

[40] *DeFoe v. Sprint/United Mgmt., Co.,* 196 F.R.D. 392, 394 (D. Kan. 2000).

9

of her medical issues. The court has had to intervene repeatedly, via written orders and status conferences, because plaintiff has been unable to reliably follow through on discovery obligations. The deadlines in this case remain vacated, and there is no clear answer when the court will be able to re-set them. It has "impact[ed] the court's ability to manage its docket and move forward with the case[] before it."[41] The second factor supports dismissal.

<u>The culpability of the litigant.</u> Under the third factor, the court considers plaintiff's culpability. Plaintiff is proceeding pro se and thus cannot claim her noncompliance is the fault of her attorney; she is responsible for her own actions. The undersigned has consistently instructed plaintiff of her obligations in this case, including, for example, her obligation to sit for a deposition,[42] her obligation to follow the local rules when filing motions to compel,[43] and her obligation to provide PHI documents to defendant.[44]

Plaintiff always has an explanation for why she has not complied, yet her explanations do not justify her willful inaction. Notably, the court does not believe plaintiff is violating the court's orders with ill intent. Rather, plaintiff's violations appear to be due to her consuming medical issues and a lack of predictability about how they will affect her ability to manage deadlines. The court does not doubt plaintiff is making an effort to

---

[41] *Davis*, 571 F.3d at 1062.

[42] ECF No. 139.

[43] ECF No. 110.

[44] ECF No. 98.

complete her discovery obligations but cannot keep allowing plaintiff to neglect deadlines at her choosing.

<u>Whether the court warned the litigant that noncompliance would likely result in dismissal.</u>  The court has made clear to plaintiff her obligations to comply with the federal and local rules, notwithstanding the many allowances made based on her medical condition.[45]  The undersigned already weighed dismissal once, when it instructed plaintiff that her continued failure to comply with the directive to produce PHI in this case would likely result in sanctions.[46]  As discussed in this order, the PHI issue still has not been resolved due to the parties' inability to complete the PHI deposition.

With respect to plaintiff's medical issues, the court specifically warned plaintiff that dismissal of her claims was likely if she remained unable to deal with this litigation.  The court explained in the June 5, 2019 amended scheduling order that if plaintiff wasn't medically able to deal with this litigation after the stay was lifted, the court would be unlikely to allow additional stays.  The court specifically noted, "unless plaintiff is prepared to move forward at that point, the undersigned will issue a report and recommendation to the presiding U.S. District Judge, Holly L. Teeter, that this case be dismissed, without prejudice to being re-filed, based on lack of prosecution."[47]  The fourth *Ehrenhaus* factor therefore supports dismissal.

---

[45] *Davis*, 571 F.3d at 1062.

[46] ECF No. 98 at 4.

[47] ECF No. 110 at 6.

11

Whether lesser sanctions would be appropriate and effective. *Ehrenhaus* makes clear that before the court may dismiss a case as a sanction, it must explain why lesser sanctions would be ineffective.[48] This is especially true for pro se plaintiffs, who should not unknowingly lose rights of access to the courts because of technical violations.[49]

In the undersigned's evaluation of plaintiff's behavior, it is apparent that plaintiff is not disengaged from the litigation, nor is she particularly disorganized. A deterrent of behavior in the form of monetary sanctions is not necessary. The court does not, for example, believe imposing monetary sanctions would motivate plaintiff to complete her discovery obligations timely. Plaintiff appears to be in frequent communication with defense counsel, and she makes assurances that she is working on her tasks. Yet, because her medical issues are consuming and their effects unpredictable, she cannot make commitments about her ability to get things done or show up on time and stay at a deposition. Imposing a lesser sanction is not likely to reduce the impact of her medical issues. In contrast, granting a dismissal without prejudice is intended to rectify the injustice to defendant, while also allowing plaintiff to take the time she needs to improve her medical condition. Plaintiff has represented she is currently undergoing vision therapy, and the court is hopeful within one year she will be in a position to proceed without her medical issues interfering.

---

[48] *Ehrenhaus*, 965 F.2d at 920, 922.

[49] *Id.* at 920 n.3 ("Particularly in cases in which a party appears pro se, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation.").

For the foregoing reasons, the undersigned recommends that this action be dismissed without prejudice. The undersigned recommends that plaintiff shall have one year from the date of Judge Teeter's order to re-file the case, in the hopes that her medical issues have subsided to the point she is able to litigate her case effectively and reliably. Should plaintiff timely re-file the case, the status quo on discovery will be preserved. That is, the parties shall pick up where they left off, rather than reopen discovery entirely. The undersigned does not recommend imposing any monetary sanctions for attorneys' fees or costs incurred by the defendant.

Plaintiff is hereby informed that, within 14 days after she is served with a copy of this order, she may, pursuant to Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4(a), file written objections to this order by filing a motion for review of this order. Plaintiff must file any objections within the 14-day period if she wants to have appellate review of this order. If plaintiff does not timely file her objections, no court will allow appellate review.

IT IS SO ORDERED.

February 25, 2020, at Kansas City, Kansas.

                                                s/ James P. O'Hara
                                                James P. O'Hara
                                                U. S. Magistrate Judge